IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GIORGI GELOVANI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | CIVIL ACTION NO. 1:17-cv-00164 |
| vs. | § | |
| | § | |
| VOLKSWAGEN GROUP OF AMERICA, | § | |
| INC. AND VOLKSWAGEN | § | |
| AKTIENGESELLSCHAFT, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.'S
## NOTICE OF REMOVAL

1.      Defendant Volkswagen Group of America, Inc. ("VWGoA") hereby removes this action from the 353rd District Court of Travis County, Texas, to the United States District Court for the Western District of Texas, Austin Division, 28 U.S.C. §§ 1332, 1441(a) and 1446, based on the following facts:

2.      The above-captioned Plaintiff ("Plaintiff") commenced an action in the 11th District Court of Harris County, Texas, captioned *GIORGI GELOVANI, Plaintiff vs. VOLKSWAGEN GROUP OF AMERICA, INC. AND VOLKSWAGEN AKTIENGESELLSCHAFT*, Defendants, Cause No. 2016-27355.

3.      This case was deemed transferred to the Texas MDL Pretrial Court as a tag-a-long action for consolidated and coordinated pretrial proceedings for related consumer actions based on common issues of fact on November 3, 2016.  *See* TEX. R. JUD. ADMIN. 13.5(e) (case is deemed transferred when notice has been filed in both the Texas MDL

Pretrial Court and the trial court).  Accordingly, the case is currently pending in the MDL Pretrial Court; the 353rd Judicial District Court of Travis County, Texas, Cause No. D-1-GN-16-000449, MDL Docket No. 15-0884.

4.     The United States District Court for the Western District of Texas, Austin Division, is the United States District, and Division, embracing the 353rd Judicial District Court where this action is pending.  *See* 28 U.S.C. §§ 124(d)(1) and 1446(a).  Therefore, venue of this removed action is proper in this Court.

5.     Initial Removal was preserved by having it filed within thirty days of service of Plaintiff's Petition on VWGoA, in compliance with 28 U.S.C. § 1446(b).  There has been no waiver of VWGoA's right to removal, and VWGoA has taken no actions in the state court inconsistent with this removal.

6.     This Notice of Removal is accompanied by the certified State Court file of the 98th District Court, including the docket sheet, as well as a copy of the file-stamped answer filed in the Texas MDL Pretrial Court, which are attached as Exhibit "A."  Other than the documents attached at Exhibit A, no pleadings, process, orders or other documents in the case have been served or otherwise received by VWGoA or, to VWGoA's knowledge, are presently on file in the 98th District Court.  In the event that such filings come to VWGoA's attention, true and legible copies will immediately be filed with this Court.

7.     VWGoA is serving written notification on Plaintiff's counsel and filing a Notice of Filing Notice of Removal, attaching a copy of this Notice of Removal, with the Clerk for the 353rd Judicial District Court in Travis, County, Texas.

II.    **Basis for Removal**.

A. **Diversity Jurisdiction**

8.    This Court has original jurisdiction of this action under 28 U.S.C. § 1332(a) based on diversity of citizenship because this action is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  Therefore, removal under 28 U.S.C. § 1441(a) is proper.

9.    At all relevant times, including the time of filing the Petition and the time of removal, Plaintiff is and was a citizen of the state of Texas.  *See* Petition at ¶ 3.

10.    At all relevant times, including the time of filing the Petition and the time of removal, VWGoA is and was incorporated under the laws of the state of New Jersey and maintains and maintained its principal place of business in the state of Virginia.  Therefore, VWGoA is and was a citizen of New Jersey and Virginia within the meaning of 28 U.S.C. § 1332(c).  VWGoA is not incorporated in the state of Texas, and does not maintain its principal place of business in the states of Texas.  VWGoA is not a citizen of Texas.

11.    Because VWGoA is not a citizen of the state of Texas, complete diversity of citizenship is satisfied under 28 U.S.C. § 1332(a).

12.    Defendant Volkswagen AG ("VWAG") in this cause at all times was and is not a citizen of the State of Texas.  VWAG, at the time of the initial filing of this action and ever since, has been a corporation duly incorporated and organized under the laws of the Republic of Germany, having its principal place of business in the Republic of Germany.  Thus, complete diversity between Plaintiff and Defendant VWAG exists.

13.     VWAG has not yet been served and is not properly before this Court. Therefore, VWGoA is not required to obtain consent to removal from VWAG. *See e.g. Getty Oil Corp., Div. of Texaco, Inc. v. Ins. Co. of North America*, 841 F.2d 1254, 1263 (5th Cir. 1988) (stating that all **served** defendants must join in the petition for removal).

14.     There are over 1,300 actions pending in federal courts in the United States against VWGoA and other entities arising from the Environmental Protection Agency's September 2015 Notice of Violation alleging installation of "defeat device" engine emissions control software in certain VW and Audi vehicles equipped with 2.0 liter TDI diesel engines (hereinafter "related actions").   On December 8, 2015, the Judicial Panel on Multidistrict Litigation ("JPML") ordered related actions pending in federal district courts be consolidated and transferred for centralized pretrial proceedings before the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1407.[1]   The JPML Order of December 8, 2015 (annexed hereto as Exhibit "B") identifies the vehicle Plaintiff allegedly purchased as an affected 2.0 liter TDI diesel model. Petition ¶ 10.

15.     The Petition in this action—similarly to all related actions—alleges installation of emissions "defeat device" software and noncompliance with EPA emissions regulations. *See* Petition ¶¶ 10, 14.  The Petition alleges "[T]he engine control module would command the emissions system to operate in such a way that the clean diesel vehicles would, in fact, emit up to 40 times the quantity of nitrogen oxides allowed by United States emissions standards." Petition ¶ 14.

---

[1] That action is currently pending in the Northern District of California as *In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 3:15-md-02672.

16.     Based on these allegations, Plaintiff asserts the following causes of action: (1) violations of the Texas Deceptive Trade Practices Act; (2) Breach of Express Warranty, (3) Breach of Implied Warranty; (4) Breach of Implied Warranty of Fitness for a Particular Purpose; and (5) Breach of Contract.  Petition ¶¶ 25-60.  Additionally, Plaintiff requests Attorneys' Fees, Statutory Treble Damages, and Punitive Damages.  Petition ¶¶ 35-36, 42, 47, 53, 60, "Prayer for Relief."

17.     Further, the Prayer for Relief lists, among other things, the following categories of relief:

1)     Actual damages;

2)     Rescission and repurchase of subject vehicle and restitution of all monies expended;

3)     Exemplary and punitive damages; and

4)     Reasonable attorney's fees and costs of suit.[2]

18.     In the *ad damnum* clause, Plaintiff pleads he seeks "only monetary relief of not more than $74,499.99 including damages of any kind, penalties, costs, expenses, pre-judgment interests, and attorney fees."  Petition ¶ 2.

19.     Although Plaintiff has attempted to plead $500.02 less than the jurisdictional minimum in the *ad damnum* clause in order to defeat removal, the amount in controversy of this case exceeds $75,000 and is sufficient to confer jurisdiction and to permit removal pursuant to 28 U.S.C. 1446(c)(2).

---

[2] In making its good faith calculations of the amounts being sought by the Petition, VWGoA does not concede or admit, in any fashion, that any claims for such amounts, or any amounts, have legal or factual merit, and reserves all rights and defenses to such claims.

20.    Under the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 760, 762 ("JVCA") (applicable to cases commenced on or after January 6, 2012), where a case is removed on the basis of diversity jurisdiction, "the sum demanded in good faith in the initial pleading" is ordinarily "deemed to be the amount in controversy."  28 U.S.C. § 1446(c)(2).  In addition, the JVCA provides that "the notice of removal may assert the amount in controversy" if "state practice…permits recovery of damages in excess of the amount demanded."  28 U.S.C. § 1446(c)(2)(A).

21.    Texas practice "permits recovery of damages in excess of the amount demanded" and thus, under 28 U.S.C. § 1446(c)(2)(A), "the notice of removal may assert the amount in controversy" rather than the complaint.  Texas's version of Fed. R. Civ. P. 54(c)— TEX. R. CIV. P. 301—states that after trial of a cause, "the nature of the case proved and the verdict, if any, shall be so framed as to give the party all the relief to which he may be entitled either in law or equity."  Because "Texas state law does not permit a demand for a specific sum[,] . . . 'The district court must first examine the complaint to determine whether it is "facially apparent" that the claims exceed the jurisdictional amount.'"  *Findley v. Allied Fin. Adjusters Conf., Inc.*, No. H-15-2699, 2015 U.S. Dist. LEXIS 160496, at *4–5 (S.D. Tex. Dec. 1, 2015) (citing Tex. R. Civ. P. 47; *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995) and quoting *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998)).

22.    Upon a full and fair reading of the Petition, the amount in controversy exceeds $75,000 for Plaintiff, exclusive of interest and costs.  Plaintiff pleads that in November 2011 he "purchased or leased a New 2012 Volkswagen Passat."  Petition ¶ 10.  Plaintiff also

requests "rescission and repurchase of the subject vehicle and restitution of all monies expended. Petition, "Prayer for Relief." The MSRP prices for a 2012 Passat range from $19,995 to $32,950. Treble damages under the DTPA of the purchase price alone could (depending on the actual purchase price) place the sum in controversy in excess of $75,000. TEX. BUS. & COM. CODE ANN. § 17.50(b)(1). However, even if it does not, or if the vehicle was leased instead of purchased, the treble damages sought by Plaintiff under the DTPA, together with attorneys' fees and punitive damages also sought by Plaintiff, render the amount in controversy more than the $75,000 threshold for diversity jurisdiction. TEX. BUS. & COM. CODE ANN. § 17.50(b)(1). *See e.g. Coburn v. Am. Gen. Life & Accident Ins. Co.*, No. H-12CV3678, 2013 U.S. Dist. LEXIS 73080, at *5–6 (S.D. Tex. May 22, 2013) (finding it "highly likely that the amount in controversy exceeds the $75,000 requirement . . . [when] Plaintiff has expressly sought to recover actual damages from the $35,000 life insurance policy, plus treble damages associated with her DTPA claim, attorney's fees, and costs."). In total, Plaintiff's allegations place in controversy a sum well exceeding $75,000. *See Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014) (notice of removal "need include only a plausible allegation that the amount in controversy exceeds the [$75,000] jurisdictional threshold").

23.     Plaintiff attempts to limit his damages by stating he "seeks only monetary relief of not more than $74,499.99, including damages of any kind, penalties, costs, expenses, pre-judgment interests, and attorney fees." Petition ¶ 2. Plaintiff uses the language "seek," which is not a "conclusive and indisputable admission[] necessary to legally bind the plaintiff to an amount below the jurisdictional threshold." *Ware v. Wells Fargo Bank, N.A.*, No. 3:15-

CV-1636-M, 2015 U.S. Dist. LEXIS 91558, at *7 (N.D. Tex. July 14, 2015) (internal quotation marks and alterations omitted). "[A] statement that Plaintiff **seeks** monetary relief aggregating less than $75,000 . . . by itself, is not sufficient to limit the amount in controversy and defeat diversity jurisdiction, where Plaintiff's statement does not indicate whether Plaintiff would **accept** an award in excess of $75,000." *Vielma v. ACC Holding, Inc.*, No. EP-12-CV-501-KC, 2013 U.S. Dist. LEXIS 96131, at *22 (W.D. Tex. Apr. 16, 2013) (internal quotation marks omitted) (emphasis added). Further, Plaintiff did not attach a legally binding affidavit to his state court petition stating he will not accept awards exceeding $75,000. *See Williams v. Companion Prop. & Ca. Ins. Co.*, NO. H-13-733, 2013 U.S. Dist. LEXIS 75125, at *5 (S.D. Tex. May 27, 2013) (a plaintiff may limit the amount in controversy by "filing a legally binding affidavit with [her] state court complaint, stating that she affirmatively seeks less than the jurisdictional threshold *and* further stating that she will not **accept** an award that exceeds that threshold.") (citations and internal quotation marks omitted) (emphasis added). *See also Ford v. United Parcel Service, Inc. (Ohio)*, No. 3:14-CV-1872-D, 2014 WL 4105965, at *2 (N.D. Tex. Aug. 21, 2014) ("There is no provision in [Tex. R. Civ. P.] 47 permitting a plaintiff to plead for damages "not to exceed $74,000," as [Plaintiff] has done here. Because [Plaintiff] has purposefully contravened the Texas rules governing pleading requirements so as to avoid federal jurisdiction, her pleading is not in good faith, and the sum claimed in her petition does not control.")

24.    The amount in controversy can also be gleaned from the *ad damnum* clause seeking damages for five hundred dollars and two cents less than the jurisdictional minimum. It is obvious from this that Plaintiff recognizes that the amount in controversy exceeds

$75,000 and so has attempted—albeit ineffectively—to limit the *ad damnum* amount to avoid removal. Without an effective limitation, see *supra*, it is clear that the amount in controversy is met.

### B. Federal Question Jurisdiction

25.     The United States District Court for the Western District of Texas, Austin Division, also has jurisdiction over this action under federal question jurisdiction. This action is based upon allegations concerning the widely-publicized EPA Notices of Violation dated September 18, 2015, and November 2, 2015, that addressed the alleged installation of emissions testing "defeat devices" in certain of Defendant's diesel vehicles.

26.     There are over 1,300 actions pending in federal courts in the United States against defendants based on similar allegations regarding the use of undisclosed software in the emissions control systems of Defendant's vehicles, which circumvented or defeated the purpose of the emissions tests established by the EPA (this software and its calibrations are called in the pleadings "defeat devices").

27.     On December 8, 2015, the Judicial Panel on Multidistrict Litigation ("JPML") issued an order transferring the hundreds of pending actions raising common issues of fact and law to the U.S. District Court for the Northern District of California (Breyer, J.) for coordinated and/or consolidated pre-trial proceedings. In its order, the JPML noted that "the actions in this litigation involve common questions of fact, and . . . centralization in the Northern District of California will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." Subsequently-filed actions, including an action filed by the United States at the request of the EPA Administrator, and an

action by the Federal Trade Commission ("FTC") have been filed in or transferred to the MDL. An MDL proceeding conserves the resources of the litigants and promotes judicial economy relating to these issues.[3]

28.    Plaintiff's claims are properly removable to this Court and should be adjudicated in the MDL established in the Northern District of California, which involves hundreds of actions asserting claims that arise from the same factual allegations as this one and that raise the same questions of law concerning defeat devices, the validity of certificates of conformity, and emissions regulations. Upon removal this case will be immediately tagged for transfer to the MDL.

29.    Although Plaintiff brings claims under state law, his resolution hinges on addressing a series of disputed federal questions that are substantial and will have national repercussions.

30.    At bottom, Plaintiff's claims depend on allegations that Defendants installed software programs that are illegal defeat devices under the CAA. Plaintiff contends that the "engine control module would command the emissions system to operate in such a way that the clean diesel vehicles would, in fact, emit up to 40 times the quantity of nitrogen oxide allowed by United States emissions standards," and contend VWGoA rendered fraudulent

---

[3] As reflected in the Consumer Class Action Settlement Agreement and Release (relevant portions of which are attached as **Exhibit C**), the DOJ (on behalf of the EPA), the California Air Resources Board (on behalf of the state of California), the California Attorney General, private plaintiffs representing a nationwide class of consumers, and Defendant, with the assistance of the Court-Appointed Settlement Master, former FBI Director Robert Mueller, have reached a settlement as to class vehicles with 2.0 liter engines that will resolve the pending disputes by offering a potential modification of those vehicles to allow compliance with emissions standards, remediating environmental concerns, and providing substantial compensation to individual owners and lessees. Such a resolution of large classes of claims embodies precisely the uniform resolution Congress sought to ensure when enacting Title II. Judge Breyer approved the settlement on October 25, 2016. *See* Order Granting Final Approval of the 2.0-Liter TDI Consumer and Reseller Dealership Class Action Settlement (relevant portions of which are attached as **Exhibit D**).

representations about the vehicles' fuel economy and greenhouse gas emissions. *See, e.g.*, Pet. ¶¶ 14, 13-23.

31.    The Petition relies on assumptions and accusations implicating substantial questions of federal law:

(a)    Plaintiff's Petition makes assumptions based on the Clean Air Act and EPA Notice about the presence, effect, legality, definition, and effect of a "defeat device" (¶¶ 19-23);

(b)    Plaintiff's Petition states the EPA issued Notices of Violation to VWGoA, "finding that it violated the emissions statutes each time it installed the 'defeat device' into a vehicle." (¶ 21);

(c)    Plaintiff asserts Volkswagen fraudulently failed to disclose the Affected Vehicles emit 40 times the allowed emissions levels.  (¶ 10, 14);

(d)    The Complaint makes assumptions about Clean Air Act Violation, certification to the EPA, and EPA remedial requirements.  (¶ 14, 19-23); and

(e)    Plaintiff makes claims for damages pursuant to the Texas Deceptive Trade Practices Act (¶¶ 25-36), breach of express warranty (¶¶ 37-42), breach of implied warranty (¶¶ 43-47), breach of the implied warranty of fitness for a particular purpose (¶¶ 48-53), and breach of contract (¶ 54-60).

32.    In "contrast to federally encouraged state control over stationary sources [of environmental pollution], regulation of motor vehicle emissions ha[s] been a principally federal project."  *Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1079 (D.C. Cir. 1996); *see also Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934, 938 (9th Cir. 2011) ("On the other hand, the federal government sets nationwide emissions standards for mobile sources"); *Engine Mfrs.*, 88 F.3d at 1079 ("The regulatory difference is explained in part by the difficulty of subjecting motor vehicles, which readily move across state boundaries, to control by individual states.").  Without national control, the transitory nature of cars could create regulatory "nightmares" for manufacturers, who would otherwise face fifty different standards in fifty different states—not to mention additional standards from other localities.  *Motor & Equip. Mfrs. Ass'n, Inc. v. EPA*, 627 F.2d 1095, 1109 (D.C. Cir. 1979).  To this end, the CAA bars states from adopting or attempting to enforce any standard relating to the control of emissions from new motor vehicles. 42 U.S.C. § 7543(a).[4]

33.    The claims asserted by Plaintiff are grounded on the allegation that he is entitled to relief as a result of the fact that Defendant designed, manufactured or distributed vehicles which do not comply with the applicable emission standards because they are equipped with a defeat device.  *See*, *e.g.*, Pet. ¶¶ 14, 19-23.  Resolution of these causes of action then requires resolution of disputed questions of *federal* law, including, but not limited

---

[4] The sole exception to total federal control under the CAA are provisions that permit California to adopt its own standards and enforcement procedures if the EPA "determines that the State standards will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards."  *Id*. § 7543(b)(1).  A 1977 amendment to the CAA allows other States to choose to adopt and enforce standards identical to EPA-approved California standards.  42 U.S.C. § 7507.  It is undisputed here, however, that Texas has never sought to enforce the California standards and that the applicable emissions regulations are exclusively federal.

to, whether this action constitutes an attempt to enforce a "standard relating to the control of emissions from new motor vehicles" and therefore runs afoul of the limitation set forth in the CAA. 42 U.S.C. §7543(a); and whether and/or the extent to which Defendant's alleged conduct violates the CAA, EPA regulations, and/or federal emission standards, and the appropriate remedy for the alleged violations. Precisely the issues currently pending in the MDL. This court thus also has federal question jurisdiction pursuant to 28 U.S.C. §1331 and §1441(a).

### PLAINTIFF'S CLAIMS TURN ON SUBSTANTIAL, DISPUTED ISSUES OF FEDERAL LAW THAT HAVE NATIONAL CONSEQUENCE.

34.    Although Plaintiff dresses his claims for relief in the garb of state law, courts regularly look past the nominal cause of action to the litigation realities when deciding whether federal question jurisdiction exists. *See, e.g.*, *Franchise Tax Bd. of Cal.,* 463 U.S. at 28 (federal question jurisdiction exists over state law claims which depend on answer to substantial federal question); 13D Wright *et al.*, *supra*, § 3562 ("Throughout these cases, one important factor has been the [Supreme] Court's willingness - on occasion - to look beyond the law that created the claim being asserted to view the litigation reality in assessing whether there is a need for federal question jurisdiction.").

35.    In particular, the Supreme Court has long emphasized the "commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable, & Sons Metal Prods.*, *Inc.,* 545 U.S. 308, 312 (2005); *City of Chicago v. Int'l Coll. of*

*Surgeons*, 522 U.S. 156, 164 (1997). "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013).

36.    Here Plaintiff's Petition demonstrates on its face that the right to relief under its purported state law claims requires resolution of several disputed and substantial federal questions which give rise to federal question jurisdiction.

37.    In particular, the Petition is premised on and arises out of the September 18, 2015 Notice of Violation issued by the EPA. The core of the Petition is that Defendant installed in certain vehicles software programs that are illegal defeat devices by which "the engine control module would command the emissions system to operate in such a way that the clean diesel vehicles would, in fact, emit up to 40 times the quantity of nitrogen oxide allowed by United States emissions standards." Pet. ¶ 14.

38.    This theory undergirds the Plaintiff's claims and presents a series of disputed questions under *federal* law. For example, the claims require a finding as to whether the vehicles dramatically exceeded the federal emissions standards; a determination whether Defendant's use of the software program resulted in misrepresentations regarding greenhouse gas emissions and fuel economy; a determination of the appropriate remedy for these alleged violations of the CAA; and whether 42 U.S.C. § 7543(a) bars Plaintiff from pursuing state law claims premised on a failure to comply with CAA emission standards.

39.    Federal law is thus "an 'essential element'" of Plaintiff's claims. *See Burr v. Volkswagen Group of America, Inc.*, Case No. C16-0073-JCC (W.D. Wa. March 8, 2016)

(denying plaintiff's motion for remand on grounds that state law claims for breach of contract, violation of Washington's Consumer Protection Act, fraud and intentional misrepresentation "rest squarely on his allegation that Volkswagen violated these laws and regulations [federal statutes cited by EPA in its NOV]").

40.      Plaintiff's claims for relief require resolution of a substantial question of federal law—including, *inter alia,* whether and/or the extent to which VWGoA's alleged conduct violates the Clean Air Act, EPA regulations, and/or federal emission standards, and the appropriate remedy for the alleged violations.  *(See e.g., ¶¶ 13-24, "Prayer for Relief").* Plaintiff cannot "defeat removal by omitting to plead necessary federal questions in [his] complaint."  *Hughes v. Chevron Phillips Chem. Co. LP*, 478 Fed. Appx. 167, 171 (5th Cir. 2012) (quoting *Franchise Tax,* 463 U.S. at 22).  Similarly, Plaintiff is not permitted to "avoid federal jurisdiction by omitting from the complaint allegations of federal law that are essential to the establishment of his claim."  *McDaniel v. State,* 2006 U.S. Dist. LEXIS 59092, *6 (D. Mont. 2006) (citing *Lippitt v. Raymond James Fin. Servs.,* 340 F.3d 1033, 1041 (9th Cir. 2003); *see also Rollins Environmental Services (FS), Inc. v. Parish of St. James*, 775 F.2d 627, 631 (5th Cir. 1985) (removal was proper when plaintiff's claim involved substantial federal issues); *Chance v. Sullivan*, 993 F. Supp. 565, 567 (S.D. Tex. 1998) (Plaintiff's state claims for breach of fiduciary duty, common law fraud and fraud in the inducement, conversion, legal malpractice, and violations of the Texas Deceptive Trade Practices Act were "inescapably infused with . . . overriding federal concerns" and properly removable under federal question jurisdiction); *Hill v. BellSouth Telecommunications, Inc.*, 364 F.3d 1308, 1317 (11th Cir. 2004) (removal was proper when resolution of state law

claims depended on a judicially-created federal doctrine that applied to FCC telecommunications carriers); *League to Save Lake Tahoe v. BJK Corp.,* 547 F.2d 1072, 1074 (9th Cir. 1976); *West Virginia v. Eli Lilly & Co.,* 476 F. Supp.2d 230, 232 (E.D.N.Y. 2007) ("Federal question jurisdiction lies over claims that may sound in state law but implicate significant federal issues."); *Lehman Brothers, Inc. v. City of Lodi,* 333 F. Supp.2d 895, 906 (E.D. Cal. 2004) (state law claims for breach of contract, negligent misrepresentation, and fraud were removable as they implicated CERCLA); *Menoken v. McNamara,* 213 F.R.D. 193, 197 (D.N.J, 2003) (federal question jurisdiction existed when plaintiff's state law fraudulent concealment claim required proof of an underlying violation of the FMLA or ADA); *Schulze v. Legg Mason Wood Walker, Inc.,* 865 F. Supp. 277 (W.D. Pa. 1994) (removal was proper when resolution of state law claim was dependent upon interpretation of federal statute); *cf.* 42 USCS § 7604 ("The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an emission standard or limitation, or such an order, or to order the Administrator to perform such act or duty . . . .").

41.    Indeed, courts have repeatedly found the exercise of federal question jurisdiction to be appropriate where, as here, liability is dependent on the application or meaning of a federal statute or regulation.  S*ee e.g., Hill v. BellSouth Telecommunications, Inc.,* 364 F.3d 1308, 1317 (11th Cir. 2004) (removal was proper when resolution of state law claims depended on a judicially-created federal doctrine that applied to FCC telecommunications carriers); *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996) (exercise of federal jurisdiction proper where plaintiff's state law claim for breach of

contract was dependent on meaning of the term "owner" under the Clean Air Act, and where the resolution of a federal issue in state law causes of action could, because of different approaches and inconsistency, undermine the stability and efficiency of a federal statutory scheme necessary to uniformity); *see also Rollins Environmental Services (FS), Inc. v. Parish of St. James*, 775 F.2d 627, 631 (5th Cir. 1985) (removal was proper when plaintiff's claim involved substantial federal issues); *League to Save Lake Tahoe v. BJK Corp.,* 547 F.2d 1072, 1074 (9th Cir. 1976) (same); *Dooley v. Medtronic, Inc.*, 39 F. Supp. 3d 973, 985–86 (M.D. Tenn. 2014) (state court action alleging state law causes of action properly removed because the complaint invoked the federal Medical Device Act); *Arrington v. Medtronic, Inc.*, No. 2:14-CV-02473-JTF, 2014 WL 10384579, at *9 (W.D. Tenn. Sept. 2, 2014) (substantial federal question exists where "Plaintiffs cannot prevail on their claims, unless they prove that Defendants violated federal requirements"); *West Virginia v. Eli Lilly & Co.,* 476 F. Supp.2d 230, 232 (E.D.N.Y. 2007) ("Federal question jurisdiction lies over claims that may sound in state law but implicate significant federal issues."); *Lehman Brothers, Inc. v. City of Lodi,* 333 F. Supp.2d 895, 906 (E.D. Cal. 2004) (state law claims for breach of contract, negligent misrepresentation, and fraud were removable as they implicated CERCLA); *Menoken v. McNamara,* 213 F.R.D. 193, 197 (D.N.J, 2003) (federal question jurisdiction existed when plaintiff's state law fraudulent concealment claim required proof of an underlying violation of 1994) (removal was proper when resolution of state law claim was dependent upon interpretation of federal statute).

42. There is a substantial federal interest in resolving the important issues surrounding allegations of using defeat devices, rendering invalid certificates of conformity,

and violating federal emissions standards.  Defendants sell vehicles throughout the United States.  The need for uniformity in addressing these questions is acute, as evidenced by the fact that the controversy over allegations relating to Defendant's potential use of defeat devices has resulted in consolidation of over 1,300 lawsuits in the Northern District of California.  Under the *Grable* standard, this case gives rise to federal question jurisdiction and is removable to federal court.  "Where the resolution of a federal issue in a state law cause of action could, because of different approaches and inconsistency, undermine the stability and efficiency of a federal statutory regime, the need for uniformity becomes a substantial federal interest, justifying the exercise of jurisdiction by federal courts."  *Ormet Corp.*, 98 F.3d at 807.

43.    Finally, this Court can exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367, to the extent this Court determines there are any state claims due to the presence of independent Federal subject matter jurisdiction.

WHEREFORE, because the United States District Court for the Western District of Texas has original diversity of citizenship jurisdiction of this matter and original federal question jurisdiction, Volkswagen Group of America, Inc. respectfully requests that this Court assume full jurisdiction over the cause herein as provided by law.

Respectfully submitted,

*/s/ C. Vernon Hartline, Jr.*

**C. VERNON HARTLINE, JR.**
State Bar No. 09159500
hartline@flash.net

**HARTLINE  DACUS  BARGER  DREYER
LLP**
8750 N. Central Expressway, Suite 1600
Dallas, Texas  75231
214-369-2100
214-369-2118 fax

And

**DARRELL L. BARGER**
State Bar No. 01733800
dbarger@hdbdlaw.com

**HARTLINE  DACUS  BARGER  DREYER
LLP**
1980 Post Oak Boulevard, Suite 1800
Houston, Texas 77056
713-759-1990
713-652-2419 fax

And

**RICHARD W. CREWS, JR.**
State Bar No. 05075500
rcrews@hdbdlaw.com

**HARTLINE  DACUS  BARGER  DREYER
LLP**
800 North Shoreline Blvd, Suite 2000, North
Tower
Corpus Christi, TX 78401
361-866-8000
361-866-8039 fax

And

**JEFFREY L. CHASE**
NY State Bar No. 1002203
jchase@herzfeld-rubin.com
**MICHAEL B. GALLUB**
NY State Bar No. 2141851
mgallub@herzfeld-rubin.com

**HERZFELD & RUBIN, P.C.**
125 Broad Street
New York, New York 10004
212-471-8459
212-344-3333 fax

And

**WILLIAM B. MONAHAN**
New York State Bar 4229027
monahanw@sullcrom.com

**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York 10004
212-558-4000
Fax: 212-558-3588

**ATTORNEYS FOR DEFENDANT VOLKSWAGEN GROUP OF AMERICA, INC.**

## CERTIFICATE OF SERVICE

On March 2, 2017, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court.   I hereby certify that I have served Plaintiff's counsel of record electronically directly to his e-mail address:

**ANTHONY P. CHESTER**
State Bar No. 24092253
tony@kazlg.com
**KAZEROUNI LAW GROUP**
1910 Pacific Avenue, Suite 14155
Dallas, Texas 75201
Phone: (952) 225-5333
Fax: (800) 635-6425

*/s/ C. Vernon Hartline, Jr.*